UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-81135-ROSENBERG/REINHART

M&M REALTY PARTNERS AT HAGEN
RANCH, LLC, a New Jersey limited
Liability company,

    Plaintiff,

v.

WILLIAM MAZZONI & THOMAS A.
SMITH, as Co-Trustees of the William
Mazzoni Trust dated *06/04/1992*, &
WILLIAM MAZZONI, individually,

    Defendants.
_____/

### ORDER GRANTING IN PART AND DENYING
### IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
### AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 57] and Plaintiff's Motion for Summary Judgment [DE 60]. Both motions have been fully briefed, and the Court heard oral argument from the parties on July 19, 2018. For the reasons set forth below, Defendants' Motion is granted in part and denied in part and Plaintiff's Motion is denied.

### I.    BACKGROUND

This dispute arises from a contract for the purchase and sale of real property. Plaintiff M&M Realty Partners at Hagen Ranch, LLC and the Defendant William Mazzoni Trust entered into the contract on August 17, 2011, whereby the Defendant trust would sell an approximate eight-acre parcel to Plaintiff. The contract provided for a six-year period for Plaintiff to satisfy all conditions precedent to close, including certain governmental development approvals; otherwise, if the conditions precedent were not satisfied, the contract terminated automatically.

The parties dispute whether Plaintiff satisfied the conditions precedent in the contract and, as a result of that dispute, Defendants refused to close the real estate transaction. After Defendants refused to close, Plaintiff initiated this lawsuit.

Plaintiff has brought three counts: a breach of contract claim that seeks specific performance (Count I), a breach of contract claim that seeks monetary damages (Count II), and a tortious business interference claim against an individual trustee of the Defendant trust, Mr. William Mazzoni (Count III).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

## III.  ANALYSIS

The parties have filed cross motions for summary judgment on the following issues:

(A) Was Plaintiff ready, willing, and able to close the real estate transaction?

(B) Did the parties' contract terminate before Plaintiff met all of the necessary conditions precedent to close?

(C) Can the individual Defendant in this case, Mr. William Mazzoni, be held liable for tortious business interference?

(D) Is specific performance available in this case?

Each issue is addressed in turn.

### A.  **WAS PLAINTIFF READY, WILLING, AND ABLE TO CLOSE?**

For a plaintiff to establish a *prima facie* claim that seeks specific performance, the plaintiff must show that he or she was ready, willing, and able to perform under the contract. *Hollywood Mall, Inc. v. Capozzi*, 545 So. 2d 918, 920 (Fla. Dist. Ct. App. 1989). Likewise, for a

plaintiff to establish a *prima facie* claim that seeks damages, the plaintiff must show that he or she was ready, willing, and able to perform under the contract. *See, e.g.*, *Lusigman v. Lusigman*, 972 So. 2d 1076, 1078-79 (Fla. Dist. Ct. App. 2008) (plaintiff's alternative claim for damages failed based on lack of evidence of ability to close). Defendants argue that summary judgment must be entered in their favor as to Count I and Count II because Plaintiff has no evidence that it was ready, willing, and able to close the transaction in this case.

There are three ways for a purchaser to establish that the purchaser is ready, willing, and able to close: (1) cash on hand; (2) possession of assets and a credit rating, which with reasonable certainty, enable the party to command the requisite funds; or (3) a binding commitment by a financially able third-party to loan or invest the necessary funds. *Capozzi*, 545 So. 2d at 920-21. Defendants argue that Plaintiff has evidence of none of foregoing to show it was ready, willing, and able to close. In response, Plaintiff cites to two pieces of evidence. First, Plaintiff cites to a letter prepared by Valley National Bank which was drafted on October 2, 2017.[1] That letter is very brief and reads as follows:

> Please be advised that Jack Morris and Joseph Marino have credit facilities currently in good standing with Valley National Bank, with combined open availability in excess of $5,000,000. Please feel free to contact me if I can be of any further assistance.

DE 58-6 at 3. Second, Plaintiff cites to an affidavit by an owner of Plaintiff, Mr. Joseph A.

---

[1] This letter is dated after the date upon which the contract states it shall automatically terminate. *See* discussion on this issue, *infra*.

4

Marino. In that affidavit, Mr. Marino attests that *he* possessed the funds to close. DE 69 at 9.[2]

But as Defendants emphasize, the Plaintiff in this case is not Mr. Marino. Mr. Marino was not the purchaser of the real property in this case—Plaintiff was. Mr. Marino is an owner of Plaintiff. Even when an individual with an interest in a transaction testifies that he or she was willing to provide a purchaser with the required money to close, the purchaser is still not entitled to specific performance if there is no evidence of a *binding* commitment for the funds to be provided. *Capozzi*, 545 So. 2d at 920; *see also Taylor v. Richards*, 971 So. 2d 127 (Fla. Dist. Ct. App. 2007) (reversing a bench trial on the grounds that there was no binding commitment for an individual to provide the necessary funds to close); *Sticht v. Shull*, 543 So. 2d 395, 397 (Fla. Dist. Ct. App. 1989) (finding that a purchaser failed to demonstrate the ability to command the funds necessary to make a purchase where his alleged business partner, who was to provide the necessary financing for the purchase, was not legally obligated to perform under the contract).

The letter quoted above does not contain a binding commitment for funds to be provided to the Plaintiff. The letter does not even contain a *non*-binding commitment to Plaintiff. The letter states only that Mr. Marino, together with another owner of Plaintiff, personally possessed credit facilities in excess of five million dollars. These facts are analogous to those in the case of

---

2 Plaintiff contends that it previously spent $740,000 developing the subject property, but Plaintiff's support for this contention is paragraph 10 of Mr. Marino's affidavit. DE 69 at 7. There is no paragraph 10 in the affidavit, which Plaintiff conceded at oral argument. DE 69 at 10. Plaintiff also contends that it spent $740,000 developing the subject property by citing to "Sellers [sic] Statement of Facts, Exh 16, Exh. A," which is a citation without a pincite to an image-based document containing 347 pages. DE 68 at 4. At oral argument, Plaintiff directed the Court's attention to two separate pages of that filing. Upon review, neither of those pages (page 39 and page 346) supports the proposition that *Plaintiff* spent $740,000 developing the property in this case and, instead, the evidence reflects expenditures by a entities that are not a party to this case (Edgewood Properties and M&M Realty Partners). *See* DE 58-16 at 346. In contrast, Defendants have provided specific evidence that *Plaintiff* did not spend money developing the property; rather, a separate entity that is not a party to this case paid for the development. DE 75 at 3. The Court therefore cannot conclude that Plaintiff has cited evidence that Plaintiff spent $740,000 and, as a result, the Court sees no reason why this fact should be considered in any determination as to whether Plaintiff was ready, willing, and able to close. Even if the Court could consider this fact, however, the Court's decision would remain unchanged for the reasons set forth below.

*Hollywood Mall, Inc. v. Capozzi*. In *Capozzi*, a father created for his children a real estate purchasing entity—an entity that resembled the Plaintiff in the instant case. *Capozzi*, 545 So. 2d at 919. The contracting-purchaser for the property in *Capozzi* was the entity—not the father personally. *Id.* At trial, the father argued that the entity was ready, willing, and able to close because he personally would have committed the funds for the entity to do so. *Id.* at 920. Based upon the father's testimony, the trial court was persuaded that the purchasing-entity was ready, willing, and able to close. *Id.* The appellate court reversed, finding that even though the father was the chairman of the board for the purchasing-entity, the "[corporate-chairman father] was under no *obligation* to provide funds to the corporation to close the transaction, and [the purchasing-entity] cannot be considered to be ready, willing and able to perform when its only ability to close is derived from funds not within its control and subject to the gratuitous payment by another." *Id.* (emphasis added). Notably, the content of Mr. Marino's affidavit greatly resembles the arguments that were rejected by the appellate court in *Capozzi*.

Plaintiff does not distinguish *Capozzi* and instead relies upon the fact that Mr. Marino and his partner (Mr. Jack Morris) personally possessed sufficient funds to close.[3] In the alternative, Plaintiff argues that Mr. Marino's net worth at least creates an issue of material fact as to the question of whether Plaintiff was ready, willing, and able to close. But Plaintiff has no evidence that *it* possessed the cash to close (which it conceded at oral argument), no evidence that *Plaintiff*

---

3 Plaintiff's position at oral argument that *Capozzi* actually favors Plaintiff is without merit. Plaintiff relies upon portions of the *Capozzi* decision where the appellate court examined the finances of the father-appellee, but that was because the *Capozzi* court based its decision on two separate grounds. First, that evidence of the father's personal finances was irrelevant (which is the germane issue before this Court), and second, that the father's personal finance evidence was insufficient. *Capozzi*, 545 So. 2d at 920 ("[E]ven if we do consider the financial ability of Mr. Capozzi to close this transaction. . . ."). Plaintiff's reliance upon language raised in the court's *second* ground for reversal does not distinguish or call into question the appellate court's independent, initial ground for its reversal. This Court does acknowledge, however, that if it could consider Mr. Marino's financial worth as evidence that Plaintiff could close, that evidence would, at a minimum, create an issue of material fact as to whether Plaintiff was ready, willing, and able to close.

commanded sufficient assets to obtain the necessary funds (which it conceded at oral argument), and no evidence of possessing a *binding* commitment to secure a loan for the funds to close. Plaintiff's designated corporate representative, Mr. Morris, was given the express opportunity at a deposition to explain how the Plaintiff-entity in this case would have been ready, willing, and able to close, but Mr. Morris refused to answer questions in this area:

> Q. Which bank wrote this letter, Mr. Morris?
>
> A. Valley National Bank.
>
> Q. And which -- for this account at Valley National Bank was the [sic] M&M the account holder?
>
> A. I don't know.
>
> Q. You said that Valley National Bank wrote a letter indicating that there were sufficient funds in the bank account, right?
>
> A. No, it says -- I don't remember exactly what the letter said, but I believe the letter said that Jack and Joe have funds available in excess of that amount. You'll get a copy of the letter. You'll read it.
>
> Q. It doesn't identify any particular bank account?
>
> A. No, sir.
>
> . . .
>
> Q. And have you produced any bank accounts or bank statements indicating that as of October 4, 2017 that the Plaintiff had $5 million less the $50,000 deposit ready to transfer to the buyer -- or to the seller?
>
> A. No.
>
> Q. And this credit facility, I think the letter had stated that the credit facility was with M&M -- well, actually let me ask you. Who has these credit facilities that would be accessed for the purpose of closing on this transaction, was it you individually, or Mr. Marino, or is it an entity?
>
> A. What's the issue? Our obligation was to tell you that we had the money available and we showed you that we had the money available. I'm not going to

> get into my financial wherewithal. I'm not going to do that. We'll be able to prove to the Court that we had the money available to close. I'm not answering any more questions.
>
> Q. So you're not going to tell me in whose name those credit facilities are held?
>
> A. No, I will tell you that it's our obligation to prove to you we had the money and we will provide [sic] to the Court we had the money. That's not an issue and I'm not getting into my financial status.
>
> Q. Now, if this money was transferred to the seller at the closing, would that be a debt owed by the Plaintiff to some other person or entity?
>
> A. No, Jack Morris and Joe Marino are the members and we were -- had the money to close.
>
> Q. Well, there is no bank account that says that the Plaintiff had the money.
>
> A. We'll be happy to provide whatever is necessary to provide to prove that we had the money to close. Whether it was money in the bank or a facility. I'm not getting into my financial abilities past that. If the Court wants to see it, we'll show it to the Court in camera. I'm not getting into it.
>
> Q. Well, I had asked for this information, Mr. Morris, and the only objection I got was confidentiality and we have a confidentiality agreement in place.
>
> A. That's great.
>
> Q. And the only documents [sic] apparently produced is this letter. Are you telling me you're not going to produce and [sic] other documentation to support this position?
>
> A. I'll take it under advice with my attorneys. I'm not testifying anything else about my financial abilities.

DE 58-13. At oral argument, Plaintiff's response to the foregoing was to cite to the case of *Mogul v. McClaskey Realty, Inc.*, 309 So. 2d 254 (Fla. Dist. Ct. App. 1975), but that case is of no benefit to Plaintiff. In *Mogul*, the purchaser was an individual—not an entity—which is why the individual's personal finances were relevant. *Id.* at 254 ("The contract for purchase . . . was signed by defendant as seller and Mr. Geiger as buyer."). In summary, this Court is unable to

8

distinguish the instant case from *Capozzi* and this Court is bound[4] by the *Capozzi* decision. To further illustrate and substantiate the Court's decision on this matter, the Court utilizes the following hypothetical.

Suppose that the party who had refused to close in this case was the Plaintiff. Faced with this situation, suppose that the party insisting upon specific performance was the Defendants.[5] Plaintiff would be entirely within its legal rights to demonstrate that it did not have the funds to close, it did not have access to sufficient credit, and that it had no binding agreement with any party to grant it the funds to close. If Defendants, faced with that scenario, were to argue that Mr. Marino should be compelled[6] to provide the funds to close, that legal position would be without merit. *See, e.g.*, *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994) ("Florida[] courts disregard the corporate entity in only the most extraordinary cases."). There is no evidence or argument in this case to suggest that Plaintiff, as an entity, should be disregarded or otherwise considered a sham entity. Plaintiff did not concede this point at oral argument. In this hypothetical, Mr. Marino would be entirely justified to point out that he did not sign the contract in this case—Plaintiff did. As such, the obligation to close would not be on Mr. Marino; it would be on Plaintiff. Although Mr. Marino possessed the freedom—the discretion—to provide funds to Plaintiff so that it could close, there is no binding agreement that would *require* Mr. Marino to do so. Mr. Marino's freedom to insulate his personal funds from a suit for specific performance has the result of precluding Plaintiff from pursuing its own suit for specific

---

4 *E.g., McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002).
5 The Court recognizes that the contract in this case limited Defendants' remedies to Plaintiff's deposit, but that distinction is immaterial to the Court's illustrative hypothetical. DE 1-1 at 9.
6 The Court notes that it appears from the record that Mr. Marino has shielded his personal funds through multiple layers of business entities insofar as Mr. Marino is a trustee of a trust, which is a member of an LLC, which is in turn a member of the Plaintiff LLC. DE 75 at 1. Thus, Defendants, in the Court's hypothetical, would have to pierce multiple entities in order to reach Mr. Marino's personal funds.

performance.[7]

Plaintiff theoretically could have provided this Court with evidence of a binding commitment between Plaintiff and Mr. Marino for the necessary funds to close, but Plaintiff has not done so. Similarly, Plaintiff could have provided evidence of a bank account in Plaintiff's name with sufficient funds, or a formal resolution permitting Plaintiff to receive a loan from Mr. Marino, but Plaintiff has not done so. Plaintiff could have testified, through its designated corporate representative at its deposition, as to how Plaintiff would have been ready, willing, and able to do so, but Plaintiff has not done so. On this issue, Plaintiff has simply failed to focus on the necessary elements for its claim and to meet its burden of proof to resist summary judgment. *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) ("The non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof.").

At oral argument, Plaintiff characterized this issue as a "red herring," but a plaintiff's requirement to have sufficient evidence for a prima facie case can never be a peripheral or distracting issue—it is a core, threshold issue. Instead of focusing its evidence on the elements necessary for a prima facie case, Plaintiff has relied (both in its briefing and at oral argument) on an equity-based argument wherein Plaintiff contends that denying it relief in this case is unjust. But for the reasons set forth above, Plaintiff has not even made out a prima facie case, and this Court cannot analyze the equities of the parties' transaction to conclude that Plaintiff is somehow alleviated from its burden to make a prima facie case under the law—the Court's weighing of the

---

7 Similarly, the crux of Mr. Marino's argument is "because I could have transferred sufficient funds to Plaintiff if I wanted to, Plaintiff may seek specific performance;" but this argument is unavailing pursuant to *Capozzi* and because Defendants would not be permitted in the Court's hypothetical to make the inverse argument: "because Mr. Marino could have transferred the funds to Plaintiff if he wanted to, he should be compelled to do so." Again, the contractual limitation on Defendants' remedies in this case is irrelevant to the Court's illustrative hypothetical.

equities is only permissible to the extent the Court can choose how it will exercise its power after a prima facie case is presented and tried to the Court. *E.g., Clarke v. Aiken*, 276 F. 21, 23 (5th Cir. 1921) ("A court of equity exercises a discretion in determining whether the relief of specific performance should be granted or withheld."); *Contour Spa v. Seminole Tribe of Fla*, No 10-CV-60483, 2011 WL 1303163, at *5 (S.D. Fla. Mar. 31, 2011) ("Even if equitable contract principles do apply to such contracts, Plaintiff has not pled a prima facie case. . . .").

Because of the absence of any evidence that *Plaintiff* was ready, willing, and able to close, Defendant's Motion for Summary Judgment is granted as to Count I and Count II on the issues addressed above. Plaintiff's Motion for Summary Judgment is necessarily denied as to the same counts.

### B. **DID THE PARTIES' CONTRACT TERMINATE BEFORE PLAINTIFF SATISFIED ALL CONDITIONS PRECEDENT TO CLOSE?**

Although the Court has granted summary judgment in Defendants' favor, the Court acknowledges that the primary issue in dispute in this case has always been the parties' differing views on the requirements of their contract. In recognition of this and in fairness to the parties, the Court will address the remainder of the parties' arguments even though, by virtue of the Court's prior ruling, no further adjudication on Count I and Count II is strictly necessary.

The parties heavily dispute the dates and facts surrounding Plaintiff's development of the subject property. Plaintiff may have received final site approval for its proposed development on September 13, 2017. DE 58 at 5. However, Plaintiff was required to close on the property no later than August 17, 2017. DE 1-1 at 3. For Plaintiff to close on the property, however, the parties' agreement first required, as a condition precedent, for Plaintiff "to obtain all approvals that may be necessary for the issuance of building permits for the Buyer's intended

development." DE 1-1 at 2. Defendants argue that (i) Plaintiff did not meet the necessary condition precedent to close (no building permits were ready to issue) until *after* the deadline for the closing and (ii) because Plaintiff did not meet the closing deadline, the contract between the parties automatically terminated pursuant to the express terms of the agreement. *Id.* at 3. The Court first addresses whether Plaintiff fulfilled the necessary conditions precedent to close and then addresses whether the agreement between the parties automatically terminated on August 17, 2017.

With respect to whether Plaintiff fulfilled the necessary conditions precedent to close, the summary judgment record reveals a plethora of disputes of material fact on this issue. These disputes of material fact are so abundantly clear that the Court does not deem it necessary to discuss them in great detail. Stated succinctly, Defendants have evidence that Plaintiff did *not* obtain all necessary approvals[8] for building permits and Plaintiff has evidence that it *did* obtain all necessary approvals.[9] This dispute cannot be resolved on summary judgment. Relatedly, Plaintiff also presses the argument that it possessed the right to unilaterally waive the building permit condition precedent because the condition was solely for its own benefit,[10] but Defendants point to a provision of the contract that may establish that the building permits were for the benefit of the Defendants as well. More specifically, Defendants cite to a provision in the agreement that provides for an alternative purchase price:

---

8 *See generally* DE 56.
9 *See generally* DE 65.
10 *See Visible Difference, Inc. v. Velvet Swing, L.L.C.*, 862 So. 2d 753 (Fla. Dist. Ct. App. 2003) (holding that a zoning contingency is for the benefit of the buyer and, as a result, may be waived by a buyer).

> 3.01. **Purchase Price.** The Purchase Price to be paid by Buyer to Seller shall be the greater of (a) $5,000,000 (the "Minimum Price") or (b) the amount determined by the parties at the time of any Closing Notice, based upon Buyer achieving a rate of return on investment equal to the greater of (y) 12% or (z) 850 basis points over the 10 Year Treasury Bill, after calculating the net operating income generated by the Property ("NOI"), and determining the total Project Costs (as defined below, and which do not include the costs of acquiring the land). The formula for determining the Purchase Price shall be as follows: **Purchase Price of Property = (NOI/0.12) - Project Costs.**

DE 1-1 at 3. Thus, Defendants argue that if the Plaintiff could unilaterally waive the building permit condition precedent, then Defendants could never avail themselves of the potential benefit of a purchase price that was higher than five million dollars based upon the projected, future net income of the (properly zoned, permitted, and developed) property. Upon review of the agreement, the Court simply cannot ascertain whether Defendants' contractual interpretation is correct. The purchase price provision quoted above is sufficiently ambiguous (as applied to this specific dispute) that the Court cannot clearly and unambiguously say whether the building permit condition precedent was solely for the benefit of the Plaintiff or not. This issue cannot be decided on summary judgment.

With respect to whether the agreement between the parties automatically terminated on August 17, 2017, this issue also cannot be resolved on summary judgment. The agreement in this case does not contain a time-is-of-the-essence provision. As a result:

> When a contract for the sale and purchase of land does not make time of the essence as it relates to closing, a party can breach that contract only by refusing to perform after demand that a closing take place at a reasonable time and place.

*Henry v. Ecker*, 415 So. 2d 137, 140 (Fla. Dist. Ct. App. 1982). In light of cases such as *Ecker*, Defendants recognize the need for time to be of the essence for the Court to enforce the August 17, 2017 deadline. Accordingly, Defendants argue that even though the agreement did not contain an *express* time-is-of-the-essence provision, the automatic termination of the agreement

13

after six years is an *effective* time-is-of-the-essence provision. DE 74 at 4. It is true that time can be of the essence in an agreement even when the agreement does not expressly declare the same. *See Command Sec. Corp. v. Moffa*, 84 So. 3d 1097, 1099 (Fla. Dist. Ct. App. 2012). Upon review, however, the Court cannot clearly and unambiguously determine whether the automatic termination provision in the parties' agreement rendered time to be of the essence. One possible, reasonable, interpretation of the agreement is that because the parties allowed for *six years* for Plaintiff to perform and close the transaction, another few months[11] to close was not a material concern of the parties at the time of contract. Alternatively, another reasonable interpretation is that because Defendants permitted Plaintiff an extremely large amount of time to close, that Defendants wanted there to be a finite, immutable date upon which the parties' relationship would terminate, particularly given the reality that the property's value could be subject to substantial variance after a six-year period of time.[12] *E.g., Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (noting that ambiguous terms are subject to more than one reasonable interpretation). In order for this dispute to be resolved, a trier of fact must hear and weigh evidence of the parties' intent. *Royal Cont. Hotels, Inc. v. Broward Vending, Inc.*, 404 So. 2d 782, 783-84 (Fla. Dist. Ct. App. 1981) (holding that parole evidence of intent may be admitted to resolve ambiguity in a contract term). In conclusion, this is not an issue that the Court can decide on summary judgment.

---

11 There is support in the record for the proposition that Plaintiff would have required approximately six additional months to obtain building permits. *E.g.*, DE 58 at 5-6.

12 In the event evidence on this issue were to be presented to the Court at a trial, the Court may require legal briefing as to how this evidence may be used to overcome the general principle described in *Henry v. Ecker* that disfavors rigid adherence to closing dates in contracts for the sale of land. 415 So. 2d 137, 140 (Fla. Dist. Ct. App. 1982). This issue did not receive sufficient attention in the parties' respective motion papers.

For the foregoing reasons, each party's Motion for Summary Judgment is denied as to Count I and Count II on the foregoing issues.

### C. CAN DEFENDANT MAZZONI BE HELD LIABLE FOR TORTIOUS BUSINESS INTERFERENCE?

Plaintiff has brought a claim for tortious business interference against Defendant William Mazzoni. Plaintiff alleges that Mr. Mazzoni worked to frustrate Plaintiff's ability to close on the transaction in this case. Mr. Mazzoni is not a stranger to the parties. It is undisputed that Mr. Mazzoni is a co-trustee of the Defendant trust. Mr. Mazzoni *signed* the contract at the heart of this case. DE 1 at 1-1 at 12. Because Mr. Mazzoni is not a stranger to the transaction in this case, a claim for tortious business interference cannot be brought against Mr. Mazzoni except in very narrow, limited circumstances. The Court expounded upon this area of law in a recent case, *Walter v. Jet Aviation Flight Servs., Inc.*, No. 9:16-CV-81238, 2017 WL 3237375, at *8 (S.D. Fla. July 31, 2017):

> An interfering defendant is not a stranger ... if the defendant has any beneficial or economic interest in, or control over, that relationship. This includes when a defendant has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." "Similarly, **an agent of a corporate party to the business relationship cannot be held liable for tortious interference if he was acting within his capacity and scope as an agent of the corporation**." "[A]n employee or representative of a contracting party must be considered as a party to the [contractual] relationship. Given that corporate entities ... must act through individuals, a tortious interference claim will generally not lie against employees and representatives of contracting entities."

(citations omitted) (emphasis added). An agent of a corporate party may only be held liable for tortious business interference where "malice is the **sole** basis for the interference. In other words, the party must be interfering **solely** out of spite, to do harm, or for some other bad motive." *Id.* (citation omitted).

15

Defendant argues that the record evidence in this case clearly establishes that Mr. Mazzoni cannot be held liable for tortious business interference as a matter of law. The Court agrees. The record evidence of Mr. Mazzoni's interference is limited. Plaintiff points to Mr. Mazzoni's deposition statement that he "didn't want to help" the Plaintiff, that he removed required signage from the subject property, and that he communicated with rival companies that he would ensure that Plaintiff never successfully closed on the property. DE 68 at 19-20. Even if the Court were to accept all of these contentions as true, Mr. Mazzoni still cannot be held liable for tortious business interference. This is because the record evidence shows that Mr. Mazzoni's desire to thwart the transaction in this case was consistent with the desire and interest of the Defendant trust, which sought to terminate the parties' agreement in August of 2013. DE 58 at 10.[13] The Defendant trust no longer wished to do business with Plaintiff because of Plaintiff's related entity suing the Defendant trust in separate litigation and Plaintiff's failure to file status reports on its property development progress. *Id.* As a result, Mr. Mazzoni cannot be shown to have acted **solely** out of malice because, at a minimum, he was acting upon the desire and interest of the Defendant trust. *E.g., Dukenel v. Kindred Hosp. East LLC*, No 09-CV-61184, 2010 WL 1850238, at *1-2 (S.D. Fla. May 7, 2010). Furthermore, Mr. Mazzoni in addition to being a trustee of the Defendant trust is also a trust beneficiary. DE 58-1 at 1. Thus, the crux of Plaintiff's position is that Defendant Mazzoni essentially tortiously interfered with himself—he interfered with his own trust. Accepting Plaintiff's allegations as true, Plaintiff could have possibly, theoretically, served a notice of default upon the Defendant trust for the actions of its agent, trustee, and beneficiary, but Plaintiff elected not to do so. For all of the foregoing reasons,

---

13 Plaintiff's Response to Defendants' Statement of Facts does not properly dispute these facts. DE 69 at 5.

Mr. Mazzoni cannot be held liable for tortiously interfering with his own trust because the record establishes that, at a minimum, Mr. Mazzoni's actions were not undertaken solely out of malice and were instead to the benefit and interest of the Defendant trust, consistent with the trust's desires.[14]

For the foregoing reasons, the Count grants Defendants' Motion for Summary Judgment as to Count III and denies Plaintiff's Motion for Summary Judgment as to Count III.

### D. IS SPECIFIC PERFORMANCE AVAILABLE IN THIS CASE?

Defendants argue that Plaintiff is not entitled to damages for breach of contract in this case because the contract for sale limited Plaintiff's remedies to specific performance, provided that the property was not "unobtainable." DE 1 at 9. Defendants argue that the property is not unobtainable because they have not sold the property. *See Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849 (11th Cir. 2009) (under Florida law, specific performance is not available where the property has been conveyed to a third-party purchaser). In response, Plaintiff cites to no case law for the proposition that the property is somehow unobtainable or unavailable for the remedy of specific performance and, as a matter of common sense and logic, the Court finds Defendants' position on this point to be persuasive. At this time, however, the Court is not prepared to conclude that Plaintiff's damages claims fail as a matter of law because (i) the Court has already granted summary judgment in favor of Defendants on other grounds and (ii) if this case were ever to proceed to a trial the Court cannot be sure that, at that time, the property will still be available for the remedy of specific performance. For these reasons, the parties' respective arguments on the issue of damages are all denied without prejudice.

---

14 Furthermore, the Court accepts and adopts Defendants' argument that Plaintiff's evidence of malice is primarily unsupported by citations and, to the extent Plaintiff does have citations to evidence, that evidence is insufficient to show spiteful malice.

17

### IV.     CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that on Defendants' Motion for Summary Judgment [DE 57] is **GRANTED IN PART AND DENIED PART**.  The Motion is **GRANTED** insofar as summary judgment is granted in Defendants' favor as to Count III and granted as to Counts I and II on the issue of whether Plaintiff was ready, willing, and able to close.  Defendants' Motion is **DENIED WITHOUT PREJUDICE** as to any argument pertaining to damages.  Defendants' Motion is **DENIED** in all other respects.  Plaintiff's Motion for Summary Judgment [DE 60] is **DENIED WITHOUT PREJUDICE** as to any argument pertaining to damages.  Plaintiff's Motion is **DENIED** in all other respects.  Judgment is therefore entered in Defendants' favor as to all counts.  All other pending motions are **DENIED WITHOUT PREJUDICE AS MOOT**.  The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 23rd day of July, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record